# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**DIAZ AVIATION CORPORATION d/b/a BORINQUEN AIR,**

    **Plaintiff,**

    v.

**AIRPORT AVIATION SERVICES, INC., et. al.,**

    **Defendants.**

**Civil No. 10-1915 (GAG)**

## OPINION AND ORDER

Plaintiff Diaz Aviation Corporation[1] ("Plaintiff") filed a complaint against Defendants Airport Aviation Services, Inc. ("AAS"), Total Petroleum Puerto Rico Corp. ("Total"), and Esso Standard Oil Company Puerto Rico ("Esso") (collectively referred to as "Defendants"). The complaint alleges that Defendants monopolized the sale of aviation fuel in Puerto Rico and engaged in unlawful price discrimination. Plaintiff's action is brought pursuant to 18 U.S.C. §§241 and 1951; 15 U.S.C. §1 *et seq.*; and Article 1802 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31 §5141.

Presently before the court are Defendants' motions to dismiss (Docket Nos. 11, 12 and 13). AAS moved under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the claims against it (Docket No. 11). Co-defendants Total and Esso moved severally under Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims against them (Docket Nos. 12 and 13). Plaintiff filed a response in opposition to all three motions (Docket No. 14). Total filed a reply to Plaintiff's opposition motion (Docket No. 23).

After reviewing the pleadings and pertinent law, the court **GRANTS** Defendants' motions to dismiss (Docket Nos. 11, 12 and 13).

---

[1] Diaz Aviation Corporation operates under the name Borinquen Air. (See Docket No. 1 at 1 ¶ A.)

### I.     Legal Standard

"The general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief." Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (internal citations and quotations omitted). "This short and plain statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Federal Rule of Civil Procedure 12(b)(1) is '[t]he proper vehicle for challenging a court's subject-matter jurisdiction." Valentin v. Hospital Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001). Rule 12(b)(1) is a "large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction." Id. at 362-363. A moving party may base a challenge to the sufficiency of the plaintiff's assertion of subject matter jurisdiction solely on the pleadings. Medical Card System v. Equipo Pro Convalencia, 587 F. Supp. 2d 384, 387 (D.P.R. 2008) (citing Hospital Bella Vista, 254 F.3d at 363).

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(1) is subject to a similar standard of review as a motion brought pursuant to Rule 12(b)(6). Boada v. Autoridad de Carreteras y Transportacion, 680 F. Supp. 2d 382, 384 (D.P.R. 2010) (citing Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994)). "When a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." Merlonghi v. U.S., 620 F.3d 50, 54 (1st Cir. 2010) (citing Hospital Bella Vista, 254 F.3d at 363).

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. The court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." Id. at 555. In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."

Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint alleged-but it has not 'show[n]' -'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## II.   Factual and Procedural Background

Plaintiff Diaz Aviation is an aviation business involved in a number of aviation-related activities, which, since 1995, include the sale of aviation fuel ("AVGAS") at Luis Muñoz Marin Airport ("LMM") in Carolina, Puerto Rico. When it began selling AVGAS, Plaintiff was able to purchase its AVGAS supply from Texaco, Shell, and Esso. Eventually, Esso prevailed in the market and became the sole supplier of AVGAS in Puerto Rico. Esso later sold its operation to Total and as a result became the sole supplier of AVGAS in Puerto Rico. Thus, Plaintiff must now purchase its AVGAS from Total.

Co-defendant AAS also fuels aircrafts at LMM. It is alleged that a contract was formed between AAS and Esso "that permitted the [former] to control the retail sale of . . . [AVGAS] at the LMM airport and in Puerto Rico in general." (See Docket No. 1 at 3 ¶ D.) It is further alleged that Total continued with the contract under the same terms once Total purchased Esso's aviation fuel interests. (See Docket No. 1 at 3 ¶ 2.)

Plaintiff alleges that said contract "has given [AAS] an undue advantage to the point that . . . [AAS] can sell AVGAS to other fuelers sometimes cheaper than what Total charges." (See Docket No. 1 at 4 ¶ 3.) The complaint states that "[b]uying cheaper from Total has given an unfair advantage to AAS" and has allowed it "to undercut any competition from anyone including [Plaintiff]." Id. Plaintiff also alleges that Defendants engaged in conduct that created a monopoly regarding the sale of aviation fuel in Puerto Rico. (See Docket No. 1 at 4 ¶ 5.)

The complaint claims that Defendants' actions have resulted in Plaintiff's inability to sell AVGAS at a fair price, and consequently losing sales to AAS. (See Docket No. 1 at 4-5 ¶ 6.) Plaintiff alleges that "[t]he conspiracy between [AAS, Esso and Total] has caused damages . . . in

**Civil No. 10-1915 (GAG)**                    4

the amount of $1,000,000 in lost profits in the last years." (See Docket No. 1 at 5 ¶ 8.)

Each of the three Defendants have filed motions to dismiss (Docket Nos. 11, 12 & 13). Plaintiff responded to all three motions with a motion in opposition (Docket No. 14). Defendant Total filed a reply to Plaintiff's response motion (Docket No. 23).

**III.    Discussion**

Plaintiff alleges several causes of action in its complaint against Defendants. Each of these issues are addressed separately.[2]

### A.    18 U.S.C. Section 241

Plaintiff's complaint cites to 18 U.S.C. Section 241, which provides for the criminal prosecution of two or more persons conspiring to interfere with the constitutional or legal rights of another individual. See 18 U.S.C. § 241. This statute does not provide for a private cause of action. See Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989). "Generally, a private citizen has no authority to initiate a federal criminal prosecution." Id. (citing Keenan v. McGrath, 328 F.2d 610, 611 (1st Cir. 1964). "Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241-242 (the criminal analogue of 42 U.S.C. § 1983)." Id. Because Plaintiff is legally precluded from seeking relief under 18 U.S.C. Section 241, any claim under this criminal statute is subject to dismissal. See Lumpkin v. Lucey, 2010 WL 1794400 (D. Mass. May 4, 2010); see also Pelumi v. Landry, 2008 WL 972704 (D.R.I. Apr. 7, 2008). Accordingly, the court **DISMISSES** this cause of action against all Defendants.

### B.    18 U.S.C. Section 1951

Plaintiff also cites to 18 U.S.C. Section 1951, which provides for the criminal prosecution of whoever interferes with commerce by threats or violence. Title 18 U.S.C. Section 1951, commonly known as the Hobbs Act, states as follows:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or

---

[2] Plaintiff mentions P.R. Laws Ann. tit. 10 §§ 257–76 in its response in opposition to Defendants' motions to dismiss. (See Docket No.14 at 3.) The same, however, was not raised in the complaint and the court does not consider it here.

attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. §1951(a).

Without controlling precedent from the First Circuit as to whether the Hobbs Act creates a private right of action, the court looks at caselaw from other circuits. The Eight Circuit has found "that neither the statutory language of 18 U.S.C. § 1951 nor its legislative history reflect an intent by Congress to create a private right of action." Wisdom v. First Midwest Bank, 167 F.3d 402, 408 (8th Cir. 1999). District courts that have addressed this issue have also found that the Hobbs Act does not give rise to a cause of action for civil liability because it is "purely criminal in nature." American Computer Trust Leasing v. Jack Farrell Implement Co., 763 F. Supp. 1473, 1497 (D. Minn. 1991); e.g., Boyd v. Wilmington Trust Co., 630 F. Supp. 2d. 379 (D. Del. 2009); Trevino v. Pechero, 592 F. Supp. 2d 939 (S.D. Tex. 2008); John's Insulation, Inc. v. Siska const. Co. Inc., 774 F. Supp. 156 (S.D.N.Y. 1991); Peterson v. Philadelphia Stock Exchange, 717 F. Supp. 332 (E.D. Pa. 1989). The court is persuaded by the cited decisions and thus finds no grounds for a private cause of action under the Hobbs Act.

Nevertheless, even if Plaintiff was able to bring a private cause of action under this statute, the present complaint does not contain sufficient allegations to satisfy the elements of the claim. The Hobbs Act "outlaws extortion or attempted extortion affecting interstate commerce . . . defining extortion as 'the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.'" Sanchez v. Triple-S Management, Corp., 492 F.3d 1, 12 (1st Cir. 2007) (internal citations omitted). It is a statutory requirement that "property must be obtained from another." Scheidler v. National Organization for Women, Inc., 537 U.S. 393, 405 (2003). Merely interfering with or depriving someone of property is insufficient to constitute extortion. Id. Plaintiff fails to allege that Defendants obstructed, delayed, or affected interstate commerce through robbery, extortion, or threats of physical violence.

Accordingly, the court **DISMISSES** Plaintiff's 18 U.S.C. Section 1951 claims against Defendants.

### C.  Plaintiff's Antitrust Claims

Plaintiff brings antitrust claims pursuant to 15 U.S.C. Section 1 et seq.  Section 1 of 15 U.S.C. sets forth the first section of the Sherman Antitrust Act.  The subsequent sections of Title 15 include provisions of several other antitrust statutes, including the Clayton and Robinson-Patman Acts.  As Co-defendant Total accurately points out in its motion to dismiss, Plaintiff's lack of specificity in the citation to the claim it purports to bring has forced Defendants, and the court, to surmise what claims Plaintiff may have intended to assert.  (See Docket No. 13 at 4 n.1.)  From the complaint filed, the court understands these to be the statutes under which Plaintiff purports to state its claim against Defendants.

### 1.  Sherman Act

Co-defendant Total challenges Plaintiff's Sherman Act claim stating that the complaint has failed to plead how Defendants' actions have impacted interstate commerce.  (See Docket No. 13 at 9.)  Total avers that the complaint is wholly devoid of any allegations relating to interstate commerce. Id.  Co-defendant AAS further contends that "the averments included in the [c]omplaint as to interstate commerce are non-existent."  (See Docket No. 11 at 8.)

Section 1 of the Sherman Act ("Section 1") prohibits "[e]very contract, combination . . . or conspiracy, in restraint of trade or commerce among the several [s]tates, or with foreign nations." 15 U.S.C. § 1.  In order to bring a claim under the Sherman Act and survive a motion to dismiss, Plaintiff must allege with sufficient clarity: (1) the existence of a contract, combination or conspiracy among two or more separate entities that (2) unreasonably restrains trade and (3) affects interstate or foreign commerce. Eastern Food Services, Inc. v. Pontifical Catholic University of PR, 222 F. Supp. 2d 131, 135 (D.P.R. 2002) *aff'd*, 357 F.3d 1 (1st Cir. 2004) (citations omitted) (internal quotation marks omitted).

Regarding the pleading requirements under the Sherman Act, "a plaintiff must point to the relevant channels of interstate commerce logically affected by the defendant's allegedly unlawful conduct." Cordova & Simonpietri Ins. Agency Inc. v. Chase Manhattan Bank N.A., 649 F.2d 36, 45 (1st Cir. 1981) (quoting Crane v. Intermountain Health Care, Inc., 637 F.2d 715, 722 (10th Cir. 1980)).  The trade or commerce affected by the purported wrongdoing "must involve interstate

**Civil No. 10-1915 (GAG)**                              7

claims that either affect the flow of commerce or affect commerce." <u>Ivision Intl. of PR v. Davila-Garcia</u>, 364 F. Supp. 2d 166, 170 (D.P.R. 2005) (quoting <u>Norte Car Corp. v. FirstBank Corp.</u>, 25 F. Supp. 2d 9, 16 (D.P.R.1998)).

The Supreme Court has held that the reach of the Sherman Act is as broad as Congress's power under the Commerce Clause. <u>McLain v. Real Estate Bd. of New Orleans, Inc.</u>, 444 U.S. 232, 241 (1980). However, "jurisdiction may not be invoked under that statute unless the relevant aspect of interstate commerce is identified; it is not sufficient merely to rely on identification of a relevant local activity and to presume an interrelationship with some unspecified aspect of interstate commerce." <u>Id.</u> at 242. "[A] plaintiff must allege the critical relationship in the pleadings." <u>Id.</u> (emphasis added).

A complaint claiming a violation of the Sherman Act must therefore "(1) identify a 'relevant' aspect of interstate commerce, and (2) specify its relationship to the defendant's activities alleged to be 'infected' with illegality." <u>Crane</u>, 637 F.2d at 723 (quoting <u>McLain</u>, 444 U.S. at 246). Accordingly, all a plaintiff must do to survive a defendant's motion to dismiss based on a lack of effect on interstate commerce is "allege a general connection with interstate commerce, and an effect thereon resulting from defendant's allegedly illegal conduct." <u>Ivision</u>, 364 F. Supp. 2d at 170-171 (quoting <u>San Juan Cement, Inc. v. Puerto Rican Cement Co., Inc.</u>, 922 F. Supp. 716, 723 (D.P.R. 1996)).

After a thorough reading of Plaintiff's 6-page complaint, the court finds no mention of or reference to interstate commerce. The complaint neither identifies a relevant aspect of interstate commerce, nor alleges the interrelationship between Defendants' activities and interstate commerce. Plaintiff has failed to explain how Defendants' actions are related to interstate commerce. The court will not presume the interrelationship between the challenged activity in the complaint and interstate commerce –the nexus must be plead. <u>See</u> <u>McLain</u>, 444 U.S. at 242; <u>see also</u> <u>U.S. General, Inc. v. Draper City</u>, 2006 WL 1594184 (D. Utah Jun. 7, 2006) (dismissing antitrust claims because the plaintiff did not plead a nexus between the challenged activity and interstate commerce.) The court finds that the present complaint is lacking a necessary element with respect to this antitrust claim. Accordingly, the court **DISMISSES** Plaintiff's Sherman Act claims against the Defendants.

### 2.     Clayton and Robinson-Patman Acts

In their various motions, Defendants also assert that the complaint fails to adequately allege the necessary elements of a Robinson-Patman Act price discrimination claim. They challenge Plaintiff's price discrimination claims arguing that the complaint fails to plead that any alleged discriminatory sales occurred "in commerce." (See Docket Nos. 11 at 6; 12 at 14; and 13 at 11.) Co-defendants AAS and Esso note that the alleged sales of AVGAS occurred solely in Puerto Rico. (See Docket Nos. 11 at 6; and 12 at 15.)

Price discrimination is made unlawful by Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, which provides:

> It shall be unlawful for any person . . . to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, . . . where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination . . . .

15 U.S.C. § 13(a).

The 'in commerce' language of the Clayton and Robinson-Patman Acts "differs distinctly from that of [Section 1] of the Sherman Act." Gulf Oil Corp. v. Copp Paving Co., Inc., 419 U.S. 186, 194 (1974). It does not "extend jurisdiction to the full extent of Congress's constitutional power granted by the Commerce Clause." Able Sales Co., Inc. v. Compañia de Azucar de PR, 406 F.3d 56, 61 (1st Cir. 2005) (citing Gulf Oil Corp., 419 U.S. at 199-200). Its explicit reach "extends only to persons and activities that are themselves 'in commerce,' the term 'commerce' being defined in [Section 1] of the Clayton Act . . . as 'trade or commerce among the several States and with foreign nations . . . .'" Gulf Oil Corp., 419 U.S. at 194.

"To satisfy the 'in commerce' requirement, one of the discriminatory sales must cross a state line." Able Sales, 406 F.3d at 61 (citing Gulf Oil Corp. 419 U.S. at 198-201); see also Misco, Inc. v. U.S. Steel Corp., 784 F.2d 198 (6th Cir. 1986). "For a transaction to qualify, the product at issue must physically cross a state boundary in either the sale to the favored buyer or the sale to the buyer allegedly discriminated against." Coastal Fuels of PR, Inc. v. Caribbean Petroleum Corp., 79 F.3d 182, 189 (1st Cir. 1996). "[I]t is necessary to allege . . . that the transactions complained of are

**Civil No. 10-1915 (GAG)**                            9

actually in interstate commerce." Willard Dairy Corp. v. National Dairy Products Corp., 309 F.2d 943, 946 (6th Cir. 1962).

The present complaint is defective in regard to any allegation of AVGAS sales crossing a state line. In fact, the complaint specifically points to the sale of AVGAS within Puerto Rico, particularly the sale of AVGAS at LLM. (See Docket No. 1 at 2-4.) Because the complaint contains no allegations of unlawful price discrimination in the course of interstate commerce, the court **DISMISSES** the claims brought under these statutes.

### D.  Puerto Rico Law 1802

"As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995). In cases where the federal claims are dismissed, "the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity– will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. The use of supplemental jurisdiction in these circumstances is completely discretionary, and is determined on a case-by-case basis. Id.

As all of the federal claims by Plaintiff have been dismissed, the court, in its discretion, **DISMISSES**, without prejudice, all state law claims brought by Plaintiff.

### IV.    Conclusion

For the reasons set forth above, the court **GRANTS** Defendants' motions to dismiss at Docket Nos. 11, 12 and 13, and **DISMISSES** all claims before this court.

**SO ORDERED**.

In San Juan, Puerto Rico this 18th day of January, 2011.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ

United States District Judge